## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### Owensboro Division

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, | ) ) ) | |
| PLAINTIFF, | ) ) | |
| v. | ) ) ) | Civil Action No. 4:21-CV-51-JHM |
| DEVOTED SENIOR CARE LLC, | ) ) | ***ELECTRONICALLY FILED*** |
| Serve:  Stephen Alexander Bryson 7181 Boston Laffoon Rd Philpot, KY 42366 | ) ) ) ) | |
| DEFENDANT. | ) ) | |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Selective Insurance Company of South Carolina ("Selective"), for its Complaint for Declaratory Judgment ("Petition"), states as follows:

1.      This is an action by Selective against Devoted Senior Care LLC ("Devoted Senior"), for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. 57. Selective seeks a declaration that it has neither a duty to defend nor a duty to indemnify Devoted Senior with regard to the claims asserted in the civil action styled *Horizon Adult Health Care, LLC v. Devoted Senior Care, LLC*, Madison Circuit Court, Division II, Case No. 19-ci-563 (the "Horizon Lawsuit").

2.      The Horizon lawsuit arises from a contractual dispute between underlying plaintiff Horizon Adult Health Care, LLC ("Horizon") and underlying defendant Devoted Senior.  Horizon contends that Devoted Senior poached Medicaid clients from Horizon in violation of the parties' written agreement.  Horizon seeks compensatory and punitive damages for Devoted Senior's

alleged breach of contract and "intentional" tortious interference with Horizon's advantageous contractual relationship with the clients.

3.      The insurance policy that Selective issued to Devoted Senior does not cover Horizon's allegations of breach of contract and tortious interference.

4.      Selective has agreed to defend Devoted Senior in the Horizon Lawsuit, effective March 9, 2021, subject to a reservation of rights, including Selective's right to seek a judicial determination regarding its obligations, if any, in connection with the Horizon Lawsuit.

## THE PARTIES

5.      Plaintiff Selective Insurance Company of South Carolina is an insurance company organized under the laws of the State of Indiana, with its principal place of business located in Branchville, New Jersey.  Selective is authorized to conduct business in the Commonwealth of Kentucky.

6.      Defendant Devoted Senior, LLC is a Kentucky limited liability company with its principal office in Owensboro, Kentucky.  Devoted Senior's sole member is an individual, Stephen A. Bryson, who is a citizen and resident of the Commonwealth of Kentucky.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 1332(a) because there exists diversity of citizenship between the parties and the amount in controversy exceeds $75,000, excluding interest and costs.

8.      Venue is proper in the Western District of Kentucky pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant resides in this judicial district.  Assignment to the Owensboro division is proper pursuant to LR 3.2 because the Defendant is a resident of Daviess County.

9.     There is an actual controversy existing between the parties regarding whether Selective is obligated, under the insurance policy it issued to Devoted Senior, to defend and indemnify Devoted Senior in the Horizon Lawsuit.

10.     Selective has no adequate remedy at law and this is a proper case for which the Court may exercise jurisdiction and declare rights and liabilities of the parties.

**THE INSURANCE POLICIES**

11.     Devoted Senior is the named insured on a Commercial Policy, Policy No. S 2176842 issued by Selective for the Policy Period from June 1, 2019 to June 1, 2020 (the "Policy"). A true and accurate copy of the Policy is attached as **Exhibit A** to this Petition and incorporated in its entirety by reference.

**A.  Coverage B of the Policy.**

12.     Devoted Senior seeks coverage under Coverage B of the Policy, which insures Devoted Seniors liability for "personal and advertising injury" ("Coverage B").  Coverage B's insuring agreement states as follows:

**COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.  Insuring Agreement**
   **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

13.     Coverage B defines "personal and advertising injury" as follows:

**SECTION V—DEFINITIONS**

...

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   **a.**  False arrest, detention or imprisonment;
   **b.**  Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

14.     Coverage B also specifically excludes defense or indemnification for the following:

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**
"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

…

**f. Breach Of Contract**
"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**B.  Commercial Umbrella Liability Coverage.**

15.     The Policy further includes a separate Commercial Umbrella Liability Coverage bearing form number CXL 4 (04/03) ("Umbrella Coverage").  The Umbrella Coverage's insuring agreement states as follows:

**SECTION I — COVERAGES**
**A. Insuring Agreement**
**1.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of,
the insured against any other "suit" seeking damages to which this insurance may apply.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend.

16.     The Umbrella Policy incorporates the following relevant definition:

**13.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   **a.**   False arrest, detention or imprisonment;
   **b.**   Malicious prosecution;
   **c.**   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   **d.**   Oral or written publication, in any manner, of material that violates a person's right of privacy;
   **e.**   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   **f.**   The use of another's advertising idea in your "advertisement"; or
   **g.**   Infringing upon another's copyright, trade dress or slogan in your "advertisement".
   **h.**   Discrimination because of race, religion, age, sex or physical disability. This does not apply:
      **(1)** To offenses committed by or at the direction of the insured; or
      **(2)** If insurance for such offenses is prohibited by law;

   committed during the policy period.

17.     The Umbrella Coverage also specifically excludes coverage as follows:

...

**14. Personal and Advertising Injury**
   **a. Knowing Violation Of Rights Of Another**
      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   **b. Material Published With Knowledge Of Falsity**
      "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

...

   **e. Breach Of Contract**
      "Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

## THE HORIZON LAWSUIT

18.     On or about October 7, 2016, Horizon and Devoted Senior entered into a certain Provider Participation Contract for Delivery of Personal Services (the "Contract," attached as **Exhibit B**), pursuant to which Devoted Senior would "provide in home care of Horizon's Medicaid approved Clients, all exclusively under the license of Horizon."  (Horizon Lawsuit Complaint ¶ 6, attached as **Exhibit C**).

19.     Horizon is allegedly a licensed Medicaid-services provider of in-home care for Medicaid-eligible individuals.  (*Id.* ¶ 5).  Horizon was allegedly the sole Medicaid-approved healthcare licensee of adult day care services in the geographic region serviced under the Contract. (*Id.*).

20.     Devoted Senior is a subcontractor that supplies healthcare employees but is not itself the holder of a Medicaid license.  (*Id.* ¶¶ 6–7).

21.     As alleged by Horizon, the Contract created a mutually beneficial arrangement whereby Devoted Senior would subcontract to supply employees to care for Horizon's Medicaid-eligible clients, under the auspices of Horizon's Medicaid license.  (*See id.* ¶¶ 5–9).

22.     Horizon alleges that, at some point during the Contract, Devoted Senior surreptitiously partnered with an entity alleged to be Heartsong Adult Day Health Care ("Heartsong"), a different Medicaid licensee.

23.     Devoted Senior allegedly then urged a number of Horizon's Medicaid-eligible clients to end their relationship with Horizon and follow Devoted Senior to Heartsong.

24.     On or about September 10, 2019, Horizon filed suit against Devoted Senior in Madison Circuit Court, asserting claims for breach of contract, tortious interference, and punitive damages.

25.     Horizon alleges that Devoted Senior breached the Contract by terminating its business relationship with Horizon and then "directly and indirectly soliciting Clients of Horizon" to follow Devoted Senior to Heartsong (*id.* ¶ 11).

26.     Horizon contends that the Contract contains a provision stipulating that "Devoted would have no further rights of access" to Horizon's clients following the termination of Horizon's and Devoted Senior's contractual relationship, and that Devoted Senior breached this provision by soliciting Horizon's clients.  (Horizon Lawsuit Amended Complaint ¶ 11, attached as  **Exhibit D**).

27.     Horizon further alleges that Devoted Senior tortiously interfered with Horizon's "contractual relationship with its clients" by "intentionally soliciting and encouraging the Clients to" follow Devoted Senior to Heartsong.  (Horizon Lawsuit Compl. ¶ 14).

### DEVOTED SENIOR'S TENDERS

28.     On or about September 20, 2019, Devoted Senior notified Selective of the Horizon Lawsuit and requested a defense and indemnity.

29.     On or about September 30, 2019, Selective declined to provide a defense or indemnity and advised Devoted Senior that Policy did not cover the allegations asserted by Horizon against Devoted Senior.

30.     On or about January 15, 2021, Devoted Senior took the deposition of Horizon CEO Kelly Upchurch in the Horizon Lawsuit.

31.     On or about January 22, 2021, Horizon filed its Amended Complaint in the Horizon Lawsuit (*see* **Exh. D**).

32.     Devoted Senior has renewed its tender and requested that Selective re-evaluate its coverage position based on new allegations contained in the Amended Complaint and specific

assertions made by Ms. Upchurch in her deposition.  (*See* E. Muyskens' Letter dated March 9, 2021 and attachments, attached as **Exhibit E**).

33.     In response, Selective has agreed to tender a defense of Devoted Senior in the Horizon Lawsuit, effective as of the date of Selective's receipt of the new factual information contained in the March 9, 2021 letter, subject to a full reservation of rights and to a judicial declaration of Selective's obligations to Devoted Senior under the terms of the Policy.

## FIRST CLAIM FOR DECLARATORY RELIEF

34.     Selective reaffirms and realleges each and every allegation contained in its Petition as if set forth fully herein.

35.     The claims alleged against Devoted Senior in the Horizon Lawsuit are not covered under the Policy.

36.     The Policy does not cover Devoted Senior's liability for its alleged breach of contract and/or tortious interference.

37.     The Policy specifically states that Selective shall have no duty to defend any claim or suit seeking damages for a personal and advertising injury arising from a breach of contract.

38.     The Policy specifically states that Selective shall have no duty to defend any claim or suit seeking damages for a personal and advertising injury arising from a knowing violation of the rights of another, committed with knowledge that the act would inflict personal and advertising injury.

39.     The Horizon Lawsuit seeks to hold Devoted Senior liable for a breach of contract.

40.     The Horizon Lawsuit seeks to hold Devoted Senior liable for an alleged knowing violation of Horizon's rights with respect to its Medicaid clients.

41.     The claims against Devoted Senior in the Horizon Lawsuit do not fall within the scope of the insuring agreements contained in Coverage B or the Umbrella Coverage because Horizon does not allege a "personal and advertising injury" as defined therein.

42.     The claims against Devoted Senior in the Horizon Lawsuit are specifically excluded from coverage under Coverage B by the exclusions for breach of contract and/or knowing violation of rights of another.

43.     The claims against Devoted Senior in the Horizon Lawsuit are specifically excluded from coverage under the Umbrella Coverage by the exclusions for breach of contract, knowing violation of rights of another, and publication with knowledge of falsity.

44.     Selective is therefore entitled to a declaration that there is no coverage under the Policy for the claims against Devoted Senior in the Horizon Lawsuit, and that Selective does not have a duty to defend Devoted Senior.

**WHEREFORE**, Selective respectfully demands that judgment be entered against Devoted Senior as follows:

(1)     Declaring that the claims asserted against Devoted Senior in the Horizon Lawsuit is not covered under the Policy;

(2)     Declaring that Selective has no obligation to defend or indemnify Devoted Senior in connection with the Horizon Lawsuit; and

(3)     Awarding Selective any and all other relief to which it may appear to be entitled.

Respectfully submitted,

/s/ Christopher S. Burnside
Christopher S. Burnside
Samuel W. Wardle
FROST BROWN TODD LLC
400 West Market Street, 32nd Floor
Louisville, KY 40202
Telephone: (502) 589-5400
Facsimile: (502) 581-1087
cburnside@fbtlaw.com
swardle@fbtlaw.com
Counsel for Selective Insurance Company of South
Carolina

0146160.0742466   4846-2362-4936v1