UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:21-CV-00051-JHM**

**SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA**         **PLAINTIFF**

**V.**

**DEVOTED SENIOR CARE LLC**         **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Devoted Senior Care LLC's Motion to Dismiss. [DN 7]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Dismiss is **DENIED**. Thus, Selective Insurance Company of South Carolina's Request for Oral Argument on this issue, [DN 13], is **DENIED.**

**I. BACKGROUND**

**A. Procedural History**

The Plaintiff, Selective Insurance Company of South Carolina ("Selective"), issued an insurance policy to the Defendant, Devoted Senior Care LLC ("Devoted"), for the period spanning June 1, 2019 to June 1, 2020. [DN 1 at ¶ 11]. Devoted provides healthcare employees to Medicaid licensees. [*Id.* at ¶¶ 18–20]. It contracted with one such licensee, Horizon Adult Health Care LLC ("Horizon"), to provide in-home care to Horizon's Medicaid approved clients. [DN 1-4 at ¶¶ 3–9]. This relationship deteriorated when Horizon thought Devoted improperly solicited Horizon's existing clients to change their Medicaid healthcare provider to another. [*Id.* at ¶ 11]. Horizon filed suit against Devoted in late 2019, alleging two claims: breach of contract (Count I) and tortious interference with contractual relations (Count II). [DN 1-4 at ¶¶ 10–16]; *Horizon Adult*

1

*Health Care, LLC v. Devoted Senior Care, LLC*, Madison Circuit Court, Division II, Case No. 19-ci-563.

Upon receiving notice of this lawsuit, Devoted asked Selective to defend and indemnify it in the state court proceeding, arguing the insurance policy covered these claims. [DN 1 at ¶ 28]. Selective rejected this argument and refused to defend and indemnify Devoted. [*Id.* at ¶ 29]. As the case progressed, Horizon filed an amended complaint against Devoted. [DN 1-5]. This pleading incorporated the initial complaint in its entirety and elaborated the initial breach of contract claim. [*Id.* at ¶ 11]. In response, Devoted made a second tender to Selective on March 9, 2021. [DN 1 at ¶ 32]. On May 6, 2021, Selective accepted that tender under a reservation of rights, agreeing to defend Devoted while it sought a judicial determination of its rights. [DN 7-2 at 6–7].

Selective immediately commenced the present declaratory action. It asks the Court to declare Horizon's lawsuit against Devoted outside the insurance policy's coverage, relieving Selective of any obligation to defend or indemnify Devoted.. [DN 1 at ¶¶ 42–43]. In response to Selective's declaratory action, Devoted filed this Motion to Dismiss, urging the Court to decline to exercise federal discretionary jurisdiction over this declaratory action. [DN 7].

**B. The Insurance Policy**

Selective and Devoted agree on the insurance policy's wording but dispute what those words mean. That policy states Selective will

> pay those sums that the insured becomes legally obligated to pay as damages because of *"personal and advertising injury"* to which this insurance applies. [Selective] will have the right and duty to defend against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

[DN 1-2 at 177] (emphasis added). Relevant to the present case, the policy defines "personal and advertising injury" as "injury, including consequent 'bodily injury' arising out of one or more of the following offenses":

> (d). Oral or written publication, in any matter, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services.

[*Id.* at 186]. From this definition of "personal and advertising jury," the policy excludes:

> (a) "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
> (b) "Personal and advertising injury" arising out of oral or written publication, in any manner, of material if done by or at the direction of the insured with knowledge of its falsity.
> (f) "Personal and advertising injury" rising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

[*Id.* at 177]. The policy's umbrella provision includes similar language on coverage and exclusions for "personal and advertising injury." [*Id.* at 309].

## II. LEGAL STANDARD

Selective seeks declaratory relief under the Federal Declaratory Judgment Act. The act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court's exercise of jurisdiction under the Declaratory Judgment Act is not mandatory. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004). To determine whether to exercise such discretion, and thus whether a case is appropriate for declaratory judgment, this Court considers the five factors the Sixth Circuit enumerated in *Grand Trunk Western. Railroad Co. v. Consolidated Rail Corp.*:

(1) Whether the judgment would settle the controversy;

3

(2) Whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations in issue;
(3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) Whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
(5) Whether there is an alternative remedy that is better or more effective.

746 F.2d 323, 326 (6th Cir. 1984). The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). "The relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case." *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).

### III. DISCUSSION

At this stage in this litigation, the key issue is whether the Court should exercise jurisdiction over Selective's declaratory judgment action. Selective urges the Court to exercise jurisdiction, contending the *Grand Trunk* factors support jurisdiction. Devoted disagrees, arguing the same factors weigh against exercising jurisdiction.

**A. Factors One and Two: Settlement of the Controversy and Clarification of Legal Relations**

The first factor asks "whether the declaratory action would settle the controversy." *Grand Trunk*, 746 F.3d at 326. The second factor asks "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Id.* In these cases, courts often consider the first and second factors together.

For the first factor, two lines of precedent exist in the Sixth Circuit. The first line of cases "has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court

4

action." *Flowers*, 513 F.3d at 555 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)). That line of cases has also determined, with respect to the second factor, that "the district court's decision must only clarify the legal relations presented in the declaratory judgment action." *Id*. at 557 (citing *Northland*, 327 F.3d at 454). This is the approach Selective urges the Court to take arguing that only legal issues are presented here and the Court will not have to engage in any fact-finding which will affect the parties in the underlying action.

However, the second line of cases "has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id*. at 555 (citing *Travelers Indem. Co. v. Bowling Green Pro. Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)); *Bituminous*, 373 F.3d at 814). In this line of cases, the district court's decision "must also clarify the legal relations in the underlying state action" in order for the second factor to weigh in favor of jurisdiction. *Id.* at 557 (citing *Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 814). Devoted argues that the Court should not exercise jurisdiction over this matter because a declaratory action "would not settle the controversy in the [u]nderlying [s]uit filed by Horizon against Devoted." [DN 7-1 at 5].

In reconciling these two lines of cases, the Court concludes, as it has in prior opinions, that in instances where it "will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action, the declaratory action need only settle the controversy . . . between the insured and the insurer." *Bevidere Ins. Co. v. Triangle Enter., Inc.*, No. 3:16 -cv-339, 2017 WL 653274, at *3 (W.D. Ky. Feb. 15, 2017) (citing *Auto Club Prop.-Cas. Ins. Co. v. Denton*, No. 4:15-cv-35, 2015 WL 4484173 (W.D. Ky. July 22, 2015). This comports with the Sixth Circuit's "most recent decisions [which] have held that district courts did not abuse

their discretion in concluding that a declaratory judgment would settle the controversy by resolving the issue of indemnity." *Cole's Place*, 936 F.3d at 397. Therefore, it is important to consider what questions Selective is asking to Court to answer.

Selective asks the Court to determine whether Horizon's breach of contract and tortious interference claims fall outside the insurance coverage policy. "Determining whether [a party] has a duty to defend or indemnify is a purely legal question." *Westfield Ins.,* 2021 WL 3074183, at *3. The Sixth Circuit holds coverage determinations are made "by reference to two documents: the complaint and the policy." *Cole's Place*, 936 F.3d at 400. In short, the "question for the district court . . . is whether the complaints contain 'any allegation which potentially, possibly or might come within the coverage of the policy.'" *Id.* (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)).

Horizon's complaint and amended complaint include two claims: breach of contract and tortious interference with contractual relations. [DN 1-5 at 2]. Selective's duty to defend and indemnify Devoted turns on whether those claims fall under the policy's language, "regardless of the merit of the action." *Cole's Place*, 936 F.3d at 400 (citing *James Graham Brown Found.*, 814 S.W.2d at 279). With respect to the breach of contract claim, it seems the coverage question is fairly straightforward and can be easily decided through reference to the insurance policy and the allegations of the complaint. However, Devoted insists that coverage for the tortious interference claim is not as easily decided.

Devoted argues that coverage for the tortious interference claim will depend on what they did exactly and whether they acted intentionally or negligently. Actually, as noted above, the question is whether the complaint contains any allegations that potentially, possibly or might come within the coverage provisions of the policy. This Court can certainly decide, as a legal matter,

whether there are any such allegations. Any such determination, one way or the other, will not affect the underlying action. The factfinder there will decide if the allegations are true and if so, decide whether Devoted is liable to Horizon for breach of contract and/or tortious interference with Horizon's contract.

Because the Court need only examine Horizon's complaint and the insurance policy's language, a declaratory action will resolve the "ultimate controversy" between Selective and Devoted by settling whether the former must defend and indemnify the latter. Therefore, this first factor weighs in favor of exercising jurisdiction. A declaratory action would serve a useful purpose: determining whether Selective must defend and indemnify Devoted in the Horizon lawsuit.[1] Thus, the second factor favors exercising jurisdiction.

### B. Factor Three: Procedural Fencing and *Res Judicata*

Next, the Court addresses "whether use of the declaratory judgment is motivated by 'procedural fencing' or is likely to create a race for *res judicata*." *Flowers*, 513 F.3d at 558. This factor "usually does not weigh heavily in the analysis." *Cole's* Place, 936 F.3d at 399. Courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Flowers*, 513 F.3d at 558 (citations omitted). "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Id.* (citations omitted). Generally, procedural fencing is absent when the declaratory-plaintiff filed after the start of the state court litigation.

---

[1] For the second factor, both parties cite *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), in debating whether a declaratory judgment would serve the "useful purpose" of relieving Selective of "additional harm." *Id.* at 786. Selective asserts declaratory judgment would serve a "useful purpose" since it suffers an "accruing harm" by currently paying Devoted's defense costs. [DN 9 at 13]. Devoted asserts no harm exists since Selective "voluntarily" began financing this defense a year after the first tender. [DN 12 at 7]. *Dale* states "some additional harm" is needed only "when a putative tortfeasor sues an injured party for a declaration of nonliability." 386 F.3d at 786. Because Selective is not a "putative tortfeasor" in this case, this requirement does not apply. Even if it did, a declaratory judgment would clarify Selective's "legal duties for the future," not a "past harm." *Id.*

*Encompass Indem. Co. v. Gray*, 434 F. Supp. 3d 560, 573 (W.D. Ky. 2020) (citing *Cole's Place*, 936 F.3d at 399).

Devoted alleges Selective engaged in procedural fencing by "waiting for approximately two years" before bringing this declaratory action. [DN 7-1 at 6]. In fact, Selective "instituted this action several years after the state court proceedings began." *Flowers*, 513 F.3d at 558. This timeline weighs against a finding of procedural fencing. Additionally, Selective "was not a party to the state court action," meaning its "attempt to clarify its legal obligations . . . cannot be construed as an attempt to create a race to judgment." *Id.* This factor supports exercising jurisdiction.

### C. Factor Four: Increase of Friction and Improper Encroachment

In considering the fourth factor—whether the exercise of jurisdiction would increase friction between federal and state courts—three additional sub-factors are considered:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2004)). The Court considers these sub-factors in turn.

### i. Importance of Underlying Factual Issues to Informed Resolution of the Case

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. Where "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the exercise of jurisdiction would be inappropriate. *Id.* (citation omitted).

Devoted argues unresolved factual issues in the state court lawsuit requires dismissing this case. [DN 12 at 2–7]. It asserts Selective's policy may provide coverage since Devoted allegedly made "false and misleading comments" when it improperly solicited Horizon's existing clients. [*Id.* at 3]. Devoted cites the policy's definition of "personal and advertising injury"—covering "oral or written publication . . . that slanders or libels a person or organizations or disparages a person's or organization's goods, products or services"—to say a possible factual finding of false comments would place Horizon's lawsuit under the policy's coverage. [*Id.* at 2–3]. Devoted also identifies factual issues potentially affecting the tortious interference claim. Devoted maintains that, because Horizon's tortious interference claim alleged either "malice or . . . gross negligence[,]" [DN 1-4 at ¶ 15], the "Knowing Violation Of Rights Of Another" or "Material Published With Knowledge Of Falsity" exclusions may not apply if it is determined in the underlying action that Devoted acted negligently rather than intentionally and knowingly. [DN 12 at 6–7].

At this point, it does not appear that any facts will need to be resolved by the state court prior to determining the coverage questions presented here. Nor does it seem likely that this Court will be required to engage in any fact-finding that will possibly conflict with the findings of the state court. If it is later learned not to be the case, the Court can re-visit its decision and decline to exercise jurisdiction. But for now, this sub-factor supports exercising jurisdiction.

**ii. State Court's Position to Evaluate Factual Issues**

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. The Sixth Circuit generally recognizes that "Kentucky courts are in the better position to apply and interpret its law on these issues." *Travelers*, 495 F.3d at 272 (6th Cir. 2007). Selective correctly asserts this Court is equally

9

suited to resolve this dispute since Selective is not a party to the underlying lawsuit, the state court is not considering their duty to defend, and Horizon's allegations are not dependent on any disputed facts. [DN 9 at 17]. As addressed under the first sub-factor, it appears that the Court will not need to engage in any fact-finding to resolve this insurance dispute. This second sub-factor supports exercising jurisdiction as well.

### iii. Close Nexus Between Issues and State Law and Policy

The final sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. This case involves an insurance contract's scope: whether Selective's policy covers the allegations in Horizon's complaint against Devoted. On the one hand, "[n]o federal-law questions are involved in the coverage issue." *Cole's Place*, 936 F.3d at 401. On the other hand, "not all issues of insurance contract interpretation implicate such fundamental state policies that federal courts are unfit to consider them." *Flowers*, 513 F.3d at 561. But, "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy." *Cole's Place*, 936 F.3d at 401. Thus, this final sub-factor weighs against jurisdiction.

### D. Factor Five: Alternative Remedy

The final factor to consider is the availability of alternative remedies that are "better or more effective" than a federal declaratory judgment. *Grand Trunk*, 746 F.2d at 326. A better alternative may exist where "state law offers a declaratory remedy or if coverage issues can be litigated in state-court indemnity actions." *See Encompass Indem.*, 434 F. Supp. 3d at 575 (quoting *Cole's Place*, 936 F.3d at 402). The Court's inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

Selective could have sought declaratory relief in a Kentucky court under Kentucky law. Ky. Rev. Stat. § 418.040. While this relief provides Selective the same remedy it pursues in federal court, "the state remedy has the advantage of allowing the state to apply its own law." *Cole's Place*, 936 F.3d at 401. Moreover, "Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge." *Flowers*, 513 F.3d at 562. This final factor weighs against exercising jurisdiction.

### IV. CONCLUSION

Of the *Grand Trunk* factors, three factors and two sub-factors weigh in favor of exercising jurisdiction. Conversely, one factor and a sub-factor weigh against jurisdiction. Because this case appears to be one primarily involving legal issues, and no fact-finding, the Court decides it should exercise jurisdiction under the Declaratory Judgment Act.

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Devoted Senior Care LLC's Motion to Dismiss [DN 7] is **DENIED**. Further, Plaintiff Selective's Request for Oral Argument [DN 13] on this issue is **DENIED**.

Joseph H. McKinley Jr., Senior Judge
United States District Court

September 1, 2021

cc: Counsel of Record